UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOE WEABER, | : | CIVIL ACTION NO. 3:CV-11-1090 |
| Plaintiff | : | (Judge Nealon) |
| v. | : | |
| ROBERT J. KARNES, et al., | : | |
| Defendants | : | |

## MEMORANDUM

## BACKGROUND

Plaintiff, an inmate formerly confined in the Lebanon County Prison, York, Pennsylvania[1], filed this civil rights action pursuant to 42 U.S.C. § 1983. He complains of a denial of adequate medical care by Defendants with respect to the care he received at the Lebanon County Prison for scabies. The named Defendants are Dr. Yocum and Lebanon County Prison employees: Warden Robert J. Karnes, Deputy Warden Anthony J. Hauck, Correctional Officer Allen Matter II, and Correctional Officer Delinger.

Presently before the Court and ripe for disposition is Defendants' motion to dismiss the Plaintiff's complaint. (Doc. 21). The parties have fully briefed the issues and the motion is now ripe for disposition. For the reasons that follow, Defendants' motion to dismiss will be granted.

## I. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), the court must "accept all

---

1. Plaintiff is currently housed in the Progress Community Corrections Center, Waynesburg, Pennsylvania.

factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim," FED. R. CIV. P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Twombly, 550 U.S. at 556). "[L]abels and conclusions" are not enough, Twombly, 550 U.S. at 555, and a court "'is not bound to accept as true a legal conclusion couched as a factual allegation.'" Id. (quoted case omitted). Thus, "a judicial conspiracy claim must include at least a discernible factual basis to survive a Rule 12(b)(6) dismissal." Capogrosso v. The Supreme Court of New Jersey, 588 F.3d 180, 184 (3d Cir. 2009) (per curiam).

In resolving the motion to dismiss, the court must "conduct a two-part analysis." Fowler, supra, 578 F.3d at 210. First, this Court must separate the factual elements from the legal elements and disregard the legal conclusions. Id. at 210-11. Second, this Court must "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a '"plausible claim for relief."' Id. at 211 (quoted case omitted).

In addition, because Plaintiff complains about "prison conditions," the screening provisions of 42 U.S.C. § 1997e apply, as do the screening provisions of 28 U.S.C. § 1915(e), given that he was granted in forma pauperis status to pursue this suit. The court's obligation to dismiss a

2

complaint under the PLRA screening provisions for complaints that fail to state a claim is not excused even after defendants have filed a motion to dismiss. See, e.g., Lopez v. Smith, 203 F.3d 1122, 1126 n.6 (9th Cir. 2000). Hence, if there is a ground for dismissal which was not relied upon by a defendant in a motion to dismiss, the court may nonetheless sua sponte rest its dismissal upon such ground pursuant to the screening provisions of the PLRA. See Lopez; Dare v. U.S., Civil No. 06-115E, 2007 WL 1811198, *4 (W.D. Pa. 2007), aff'd, 264 FedAppx. 183 (3d Cir. 2008).

## II. Allegations in Complaint

Plaintiff alleges that "during the latter part of February 2011, [he] developed a very annoying and itchy unidentifiable rash that progressively spread all over his body." (Doc. 1, complaint). Plaintiff states that he "contacted the medical department via a sick call form on or about February 25, 2011 and it was disregarded." Id. Although he provides no time frame, Plaintiff states that he was "then removed from Block #6 and escorted to L.C.C.F. medical department and seen by the nurse." Id. Plaintiff claims, however, that "it was determined that Plaintiff needed further medical attention that the nurse could not provide." Id.

On March 12, 2011, Plaintiff was transported to the Good Samaritan Hospital Emergency Room. (Doc. 26, Ex. A, Good Samaritan Hospital Medical Records). Plaintiff was seen by Dr. Shoaf and P.A. Poland. Id. Plaintiff reported that he had a rash and itching for five to six days, and the he "received Zyrtec, which helped itching for a few hours only" and that he was "on Bactrim and Prednisone for three days with no relief." Id. Plaintiff was examined and released from the emergency room with the following discharge instructions: "Cool shower, mild soap, moisturize, pat dry, do not rub, continue Bactrim, use Visatril 50mg every 6 hours for itch. Sign up for 3/14/11 sick call." Id.

When Plaintiff returned from Good Samaritan Hospital, he states that he was "placed in the medical isolation unit" and "remained there for approximately two (2) weeks before he was seen by the L.C.C.F. medical doctor, Dr. Yocum." (Doc. 1, complaint at 5). Plaintiff states that "at this point Plaintiff had sores over his entire body." Id. He alleges that Dr. Yocum "intentionally shirked his duty to properly examine and diagnose Plaintiff's sores" and was "callous and indifferent towards Plaintiff's serious medical needs and referred him to see a dermatologist." Id.

Plaintiff states that on March 8, 2011, he was "taken to the Cornerstone Dermatologist by Officer Delinger" and a "skin scraping was taken and it was immediately diagnosed that Plaintiff had scabies." Id. Plaintiff was "provided with instructions by the dermatologist to treat the scabies and return Plaintiff in one (1) week for a follow-up." Id. Plaintiff claims that "the medical department took it upon themselves to administer two (2) additional treatments to Plaintiff grossly disregarding the dermatologist's instructions." Id.

On April 7, 2011, Plaintiff again seen by Cornerstone Dermatologist. (Doc. 26, Ex. B, Consultation Record). It was reported that Plaintiff "did not follow instruction for first re-treatment", in that he "only used half of lotion he was to use", and was "retreated to make sure treatment effective." Id. It was also noted that Plaintiff "was demanding another Derm consult." Id. Plaintiff was prescribed a twelve day tapered course of Prednisone. Id.

On April 20, 2011, Plaintiff filed Inmate Grievance No. 201153, alleging that "March 5, 2011 is when [he] first tried to get help", and "medical staff ignored three sick-call slips to see the doctor." (Doc. 26, Ex. C, Grievance No. 201153). Prison staff denied Plaintiff's grievance, stating that "a continuity of care was maintained regarding your treatment for scabies." Id.

4

On June 7, 2011, Plaintiff filed the instant action, claiming that he has "suffered irreparably as a result of L.C.C.F. medical staff's negligence, callous and intentional medical indifference to Plaintiff's serious medical needs." (Doc. 1, complaint). For relief, Plaintiff seeks compensatory and punitive damages, as well as injunctive relief, for Defendants' "cruel and unusual punishment under the Eighth Amendment." Id.

## III. Discussion

### A. Eighth Amendment Medical Claim

In order to establish an Eighth Amendment medical claim, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003). See also Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." Id. (quotation and citation omitted).

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Thus, a complaint that a physician or a medical department "has been negligent in diagnosing or

treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment..." Estelle v. Gamble, 429 U.S. 97, 106 (1976). For instance, a "medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." Id., 429 U.S. at 107. "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990). Further, a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment. See White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). In sum, negligence, unsuccessful medical treatment, or medical malpractice does not give rise to a § 1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).

Further, a prison administrator cannot be found deliberately indifferent under the Eighth Amendment because he or she fails to respond to the medical complaints of an inmate being treated by a prison physician, or because, as non-physicians, they defer to the medical judgment of the inmate's treating physicians. Id. at 69. If, however, non-medical prison personnel had "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner," liability may be imposed. Spruill, 372 F.3d 236.

A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment. Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988). See McCracken v. Jones, 562 F.2d 22, 24 (10th Cir. 1977); Smart v. Villar, 547 F.2d 112, 113 (10th Cir. 1976), cert. denied, 450 U.S. 1041 (1981). Additionally, if there is a dispute over the adequacy of the received

treatment, courts have consistently been reluctant to second guess the medical judgment of the attending physician. Little v. Lycoming County, 912 F. Supp. 809, 815 (M.D. Pa.), aff'd, 101 F.3d 691 (3d Cir. 1996). The key question is whether the defendant has provided the plaintiff with some type of treatment, regardless of whether it is what the plaintiff desires. Farmer, 685 F. Supp. at 1339.

The allegations in Plaintiff's complaint, as well as the documentation submitted in support of his complaint, clearly demonstrate that Plaintiff has received medical attention for his scabies, and that the attention Plaintiff received lacks the requisite deliberate indifference to support a Section 1983 claim. Plaintiff was seen by medical personnel and treated with medication for his scabies.

At best, Plaintiff's complaint demonstrates his disagreement with prison medical personnel for initially prescribing Zyrtec, Bactrim and Prednisone. However, even when referred to an outside physician, Plaintiff's records demonstrate the outside physician's drug of choice to treat scabies was also Prednisone. Thus, Plaintiff's disagreement with the prison medical Defendants does not serve as a predicate to liability under § 1983. See White v. Napoleon, 897 F.2d at 108-10 (3d Cir. 1990) (No deliberate indifference claim is stated when a doctor disagrees with the professional judgment of another doctor since "[t]here may, for example, be several acceptable ways to treat an illness."); Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (finding that a claim for deliberate indifference does not arise just because one doctor disagrees with the diagnosis of another). This is particularly so in light of the fact that there are no allegations in the complaint that any Defendants intentionally withheld medical treatment from Plaintiff in order to inflict pain or harm upon plaintiff. Farmer, 685 F. Supp. 1335; Rouse, 182

F.3d 192. The allegations in Plaintiff's complaint amount to nothing more than Plaintiff's subjective disagreement with the treatment decisions and medical judgment of the medical staff at the prison, rising no higher than a mere negligence claim. As simple negligence can not serve as a predicate to liability under § 1983, Hudson v. Palmer, 468 U.S. 517 (1984), Plaintiff's civil rights complaint fails to articulate an arguable claim. See White, 897 F.2d at 108-110.

**B.    Claims against various Defendants**

Defendants argue that Plaintiff fails to state a claim against Defendants Warden Karnes, Deputy Warden Hauck, and Officers Matters and Delinger because the complaint reveals that they lack any personal involvement in the wrongs, and Plaintiff's allegations against these Defendants are based solely upon their supervisory roles. (Doc. 22, pp. 4-7). This Court agrees.

Local government units and supervisors typically are not liable under § 1983 solely on a theory of respondeat superior. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n.8 (1985); Monell v. Dep't of Soc. Servs. Of City of New York, 436 U.S. 658, 690-91 (1978) (holding, municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of). "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior." Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988). See also Sutton v. Rasheed, 323 F.3d 236, 249 (3d Cir. 2003). Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode, 845 F.2d at 1207. Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995). As explained in Rode:

8

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

A § 1983 action brought against a person in his or her official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." Monell, 436 U.S. at 690 n. 55. "[I]n an official-capacity action, ... a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation; thus, in an official capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." Kentucky v. Graham, 473 U.S. 159, 166 (1985) (internal quotation marks and citations omitted).

Based on the allegations contained in Plaintiff's complaint, it is apparent that he is relying solely upon a theory of respondeat superior as to Defendants Warden Karnes, Deputy Warden Hauck, and Officers Matters and Delinger. Specifically, Plaintiff alleges that Defendant Karnes is "legally responsible for the operation of L.C.C.F. and for the welfare of all the inmates of the facility" and that Defendant Hauck is "legally responsible for the care and treatment of inmates." (Doc. 1, complaint). With respect to Defendant Matters, Plaintiff claims that he was "assigned to the Block #6 housing area in L.C.C.F. and mentioned in this complaint" and with respect to Defendant Delinger, Plaintiff simply alleges that he was "assigned to the medical department and responsible for transporting inmates to outside medical care." Id.

Plaintiff does not allege that any of these named Defendants were personally involved in violating his constitutional rights. Accordingly, Plaintiff is attempting to hold these Defendants

9

liable based solely upon their positions, and as such, his complaint will be dismissed as to Defendants Karnes, Hauck, Matters and Delinger.

A separate Order will be issued.

Dated: September 26, 2012

_____
**United States District Judge**